Troy William STARKEY, Appellant,

v.

Donald WYRICK, Warden, Missouri State Penitentiary, Appellee.

No. 76–2024.

United States Court of Appeals, Eighth Circuit.

Submitted April. 15, 1977.

Decided May 23, 1977.

Daniel B. Hayes, Clayton, Mo., for appellant.

Philip M. Koppe, Asst. Atty. Gen., Jefferson City, Mo. (briefed and argued case) John D. Ashcroft, Atty. Gen., on brief for respondent.

Before VOGEL, Senior Circuit Judge, and LAY and HENLEY, Circuit Judges.

VOGEL, Senior Circuit Judge.

Troy William Starkey appeals from an order of the United States District Court for the Eastern District of Missouri (Judge H. Kenneth Wangelin) denying appellant's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Appellant was convicted of forcible rape in the Circuit Court of St. Louis County, Missouri, on November 3, 1972. The Missouri Court of Appeals, St. Louis District, subsequently affirmed his conviction in *State v. Starkey*, 536 S.W.2d 858 (Mo.App. 1976). Appellant's motion for rehearing or transfer to the Missouri Supreme Court was denied by the Court of Appeals on May 17, 1976. On June 14, 1976, the Missouri Supreme Court denied appellant's application to transfer.

Appellant was and still is being held in the custody of Donald W. Wyrick, Warden, Missouri State Penitentiary in Jefferson City, Missouri. The United States District Court denied appellant's petition for a writ of habeas corpus on November 3, 1976. On November 23, 1976, the District Court granted appellant's motion for leave to appeal in forma pauperis and further ordered that the appellant's motion for certificate of probable cause to appeal be filed pursuant to Rule 22(b), F.R.App.P. Thereafter, on December 7th this court sustained appellant's motion for appointment of counsel on this appeal.

## STATEMENT OF FACTS

On November 3, 1972, appellant was convicted of forcible rape by a jury in Circuit Court of St. Louis County and was sentenced to thirty years' imprisonment. The rape occurred at the St. Louis airport on May 11, 1971. Appellant was first interviewed by the police approximately eight days later, after they had noticed a pickup truck near appellant's dwelling matching the description of one seen at the airport the night of the rape. Police testified at the trial that the appellant admitted that the truck was his but that he told them he had not been at the airport the day of the rape. They testified that they informed the appellant that his appearance matched the description of the rapist, including a black eye, whereupon appellant responded that he had received the black eye a couple of weeks earlier in a fight. Police then asked the appellant if he would voluntarily come to police headquarters for photographing, and he consented to do so. Appellant, accompanied by his two small daughters, drove his own truck to police headquarters. After his photograph was taken, appellant left the police headquarters. He was not placed under arrest, nor had the policemen gone to the appellant's residence with the intention of placing him under arrest. Later, the rape victim and Orson Howell, a member of the airport police, picked appellant's photograph from a group of other photographs assembled by the police. Appellant was not placed under arrest until May 20, 1971.

Testifying at his trial, the appellant admitted that he was at the airport on the day of the rape. He denied that he had a black eye at that time but stated that he told police that he received the black eye two days prior to their first interview, not two weeks earlier, as the police maintained.

## ISSUES

These arguments are stressed in this appeal:

### I

Appellant's primary and main contention on appeal is that he was not given his *Miranda* warning prior to making certain statements and being photographed. This, he claims, was a violation of the Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1964).

## II

Appellant additionally points to alleged violations of his Due Process rights under the Fourteenth Amendment.

■ As to the first point, we believe this case is ruled by the recent pronouncement of the United States Supreme Court on the *Miranda* question in *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). In that case, Mathiason was convicted of first degree burglary. His confession was critical to the State's case. Mathiason, while a burglary suspect, voluntarily accepted a police officer's invitation to come to a nearby State Patrol office for a discussion. Mathiason was told that he was not under arrest. The officer told Mathiason he wanted to talk to him about a burglary and that his truthfulness would possibly be considered by the District Attorney or Judge. The officer further stated that the police believed Mathiason was involved in the burglary and falsely stated that Mathiason's fingerprints were found at the scene of the burglary. Mathiason sat for a few minutes and then said he had taken the property. The officer then advised Mathiason of his *Miranda* rights and subsequently took a taped confession which was the subject of Mathiason's motion to suppress as being the fruit of questioning by the police not preceded by the warnings required in *Miranda.*

The Supreme Court of Oregon, by a divided vote, reversed the conviction, holding that, "the interrogation took place in a 'coercive environment,'" of the sort to which *Miranda* was intended to apply. The Supreme Court of the United States, holding that the Supreme Court of Oregon had read *Miranda* too broadly, reversed, also by a divided court. In so doing, in its per curiam opinion, the Supreme Court stated at 494, 97 S.Ct. 711, 713, 50 L.Ed.2d 714, 719:

Our decision in Miranda set forth rules of police procedure applicable to "custodial interrogation." "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise

deprived of his freedom of action in any significant way." 384 U.S., at 444, 86 S.Ct. at 1612, 16 L.Ed.2d 694 * * *.
We think the facts in the instant case are less susceptible to the applicability of the *Miranda* doctrine than are the facts in *Mathiason.*

In light of *Mathiason,* we cannot say that appellant's conversation with the police at his home was a custodial interrogation or that it took place in a coercive environment. Starkey, like Mathiason, came voluntarily to the police station. He felt free to bring his two young daughters with him. Unlike *Mathiason,* there is no evidence of any interrogation of Starkey at the station. His photograph was taken, he departed, and he was not arrested until a day or two later. We have no hesitancy, therefore, in concluding that this case must be affirmed on this point.

■ Of the additional claims of error based on alleged violations of the Due Process Clause of the Fourteenth Amendment, the most serious is directed to the identification based on photographs. The trial record shows that about eight or nine days after the crime occurred the police showed the victim a display of ten or twelve photographs and she identified one as her assailant. Orson Howell, a member of the airport police who had observed and talked with the appellant at about the time of the commission of the crime, examined the same set of twelve photographs and also identified the appellant therefrom. The display of ten or twelve photographs included two or three pictures of people other than appellant who had discolored eyes. Appellant suggests that the photographic display was unnecessarily suggestive and tainted the in-court identification. However, there was a more-than-adequate basis for in-court identification of appellant independent of the photographic identification. The victim of the crime observed the appellant at close range, first on the upper floor of the terminal where he attempted to paw her, and later in the ladies rest room where the rape took place. She had an opportunity to observe him very closely and she de-

scribed the lighting conditions in the rest room as "very bright." In addition to the victim and Howell, Jacquelyn Johnson, an employee of a rent-a-car agency at the airport, who did not view the appellant at a pre-trial lineup or see the photographic display, identified him personally at trial. We think it clear that there existed no violation of the Due Process Clause of the Fourteenth Amendment. *See Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

We have considered all of the alleged errors under the charge of lack of Due Process. Whether viewed separately or collectively, they do not rise to the level requiring cognizance as constitutional questions. See our opinion in *Cunha v. Brewer*, 511 F.2d 894 (8th Cir. 1975).

This case is in all things affirmed.